IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

HAWAII CARPENTERS TRUST FUNDS, )
*Health & Welfare Fund by its* )
*trustees* Russell Young, )
Glen Kaneshige, Eric Hashizume, )
George Ehara, Ronald Taketa, )
Kyle Chock, Shayne Chung, ) Civ. No. 18-00041 ACK-KSC
Conrad C. Verdugo, Jr., Ralph )
Hoohuli, Travis Murakami and Alika )
Fujimoto; *Apprenticeship &* )
*Training Fund by its trustees* )
Claude Matsumoto, Thomas Toma, )
Conrad Murashige, Dale Sakamoto )
-Yoneda, Roy Morioka, Vince ) <u>ORDER DENYING DEFENDANT'S</u>
Nihipali, Sheri Mau, Kyle Chock, ) <u>MOTION FOR SUMMARY JUDGMENT</u>
Ronald Taketa, Mitchell Tynanes, ) <u>AND PLAINTIFFS' REQUEST FOR</u>
Sean Newcamp, Ralph Hoohuli, ) <u>SANCTIONS</u>
Travis Murakami and Barbara Kono; )
*Vacation & Holiday Fund by its* )
*trustees* James Watanabe, Paul )
Silen, Paul Sasaki, Jay Kadowaki, )
Roy Morioka, Kyle Chock, Sean )
Newcamp, Mitchell Tynanes, Ralph )
Hoohuli, Travis Murakami, )
Tom Broderick and Blake T. Inouye; )
*Market Recovery Program Fund by* )
*its trustees* Thalia Choy, Alan )
Shintani, Justin Izumi, Ken )
Kawamoto, Bill Wilson, Lance )
Wilhelm, Sean Newcamp, Kyle Chock, )
Mitchell Tynanes, Ralph Hoohuli, )
Travis Murakami and Dale )
Sakamoto-Yoneda; *Financial* )
*Security Fund by its trustees* )
Kenneth Spence, Conrad Murashige, )
Kenneth Sakurai, Alan Shintani, )
Kyle Chock, Ronald Taketa, Shayne )
Chung, Sean Newcamp, Ralph )
Hoohuli, Clyde Sugawa, Joyce )
Furukawa, Travis Murakami and )
Michael Inouye; *Drywall Training* )
*Fund by its trustees* Vince )
Nihipali, Sr., Lito Alcantra, )

1

Bert Beaman, Mike Goodnight,                    )
Kevin Respecki, Sean Newcamp,                   )
Garrett Takara, Edmund Aczon,                   )
David Samson and Ivan Lay; *401-K*              )
*Fund by its trustees* Kenneth                  )
Spence, Conrad Murashige, Kenneth               )
Sakurai, Alan Shintani, Kyle Chock,)
Ronald Taketa, Shayne Chung, Sean               )
Newcamp, Ralph Hoohuli, Clyde                   )
Sugawa, *Joyce Furukawa,* Travis                )
Murakami and Michael Inouye                     )
                                                )
        Plaintiffs,                     )
                                                )
    v.                                          )
                                                )
H.E. JOHNSON COMPANY, INC.; JOHN                )
DOES 1-100;JANE DOES 1-100; DOE                 )
CORPORATIONS 1-100; DOE                         )
PARTNERSHIPS 1-100; DOE ENTITIES                )
1-100; DOE GOVERNMENTAL UNITS                   )
1-100,                                          )
                                                )
        Defendants.                     )
_____)

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' REQUEST FOR SANCTIONS

For the reasons discussed below, the Court DENIES Defendant H.E. Johnson Company, Inc.'s Motion for Summary Judgment and DENIES Plaintiff Hawaii Carpenters Trust Funds' request for sanctions.

### PROCEDURAL BACKGROUND

On January 31, 2018, Plaintiffs Hawaii Carpenters Trust Funds and its trustees ("Plaintiffs" or the "Trust Funds") filed a Complaint against H.E. Johnson Company, Inc. ("HEJ") and numerous Doe Defendants. The Complaint alleges that HEJ failed

to make certain employee benefit contributions to its covered employees and their eligible dependents, in violation of: (1) the Labor-Management Relations Act of 1947("LMRA"), 29 U.S.C. § 141 et seq.; (2) the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.; and (3) the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461.  Compl. ¶ 2.

HEJ filed a pre-discovery Motion for Summary Judgment on February 20, 2018 ("MSJ").  ECF No. 11.  On April 6, 2018, the Trust Funds filed a Memorandum in Opposition to Defendant H.E. Johnson Company's Motion for Summary Judgment ("Opp.")  ECF No. 19.  HEJ filed its Reply on April 16, 2018 ("Reply Br.").  ECF No. 21.  HEJ's Reply noted that the Trust Funds failed to file a separate document containing a single concise statement that admits or disputes the facts set forth in HEJ's concise statement of facts, as well as sets forth all material facts as to which the Trust Funds contend there exists a genuine issue necessary to be litigated.  Id. at 14 (citing Local Rule 56.1(b)).

On April 17, 2018, the Trust Funds filed a Responsive Concise Statement of Facts and the Supplemental Declaration of Jeffrey P. Miller. ECF Nos. 22, 23.  By minute order entered April 19, 2018, the Court construed the Trust Funds' filings together as a motion for an extension of time to file a concise

statement of facts compliant with Local Rule 56.1(b) and granted the motion. ECF No. 24. However, the Court permitted HEJ to submit a response to the Trust Funds' late-filed Responsive Concise Statement of Facts, see id., which HEJ filed on April 24, 2018, ECF No. 25.

The Court held a hearing on HEJ's MSJ at on April 30, 2018. At the hearing, the Court gave the parties until May, 4, 2018, to submit supplemental briefing on the availability of HEJ's termination defense, which the parties had not addressed. See ECF No. 26. The parties submitted their supplemental briefs on May 4, 2018. See ECF Nos. 27 ("HEJ's Suppl. Mem."), 28 ("TF Suppl. Mem."). Later that same day, HEJ filed an erratum to its supplemental brief. ECF No. 29.

## FACTUAL BACKGROUND

### I. The Collective Bargaining Agreement

On or about October 25, 2012, HEJ entered into a Collective Bargaining Agreement ("CBA") with the United Brotherhood of Carpenters & Joiners of America, Local 745, AFL-CIO (the "Union"). Compl. Exhibit ("Ex.") A, ECF No. 1-1; see also Compl. Ex. B ("Certification of Receipt and Acceptance" or "CRA"), ECF No. 1-2. The CBA was effective September 1, 2007 to and including August 31, 2012, CBA at 11,[1] but before the time of

---

[1] Because the exhibits to the Complaint have inconsistent and conflicting pagination, all citations to specific page numbers within the various
(continued . . . . )

HEJ's execution, it had been amended to remain effective to and including August 31, 2014, CRA at 75.

Among other topics, the CBA obligated HEJ to make specified employee benefit contributions to the Trust Funds, which the Trust Funds would in turn use toward paying certain employee benefits to HEJ's covered employees and their eligible dependents. CBA at 26-28 and ¶ 6. To that end, the CBA established the procedural and substantive requirements governing HEJ's contribution payments and provided for penalties in the event HEJ became delinquent on these contribution payments. Id. at 28-29.

Significant here, the CBA also contained provisions governing its duration and termination. CBA Section 1, entitled "Duration," states:

> **1.1** This Agreement shall be binding upon the respective parties effective September 1, 2007, to and including August 31, 2012, and shall be considered as renewed from year to year thereafter unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate the same.

Id. at 17 (emphasis added); HEJ's Memorandum in Support of Motion ("Def.'s Mem.") at 2-3. With respect to written notice

---

(continued . . . .)
exhibits utilize the "Page ID #" designation assigned to each page filed using this Courts electronic filing system ("ECF").

of modification, amendment, or termination, a different

provision within CBA Section 1 further provides:

> **1.2** Any such notice must be given by the
> parties desiring to modify, amend, or
> terminate the Agreement, at least one
> hundred eighty (180) calendar days prior to
> the expiration date, but not more than two
> hundred ten (210) calendar days prior to the
> expiration date. In the event such notice is
> given, and only in such event, negotiations
> for a new agreement shall commence as soon
> as possible.  If such notice is not given,
> the Agreement will be deemed to
> automatically renew for the succeeding year.

Id. at 17 (emphasis added); Def.'s Mem. at 3.

## II.  HEJ's Purported March 3, 2016 Termination of the CBA

On March 3, 2016, HEJ contends that it hand delivered

a notice of termination to the Union.  HEJ's Concise Statement

of Facts ("Def.'s CSF") ¶ 1, ECF No. 12; Def.'s CSF, Decl. of

Brian Hall ("Hall Decl.") ¶¶ 1-2, ECF No. 12-1.  The notice of

termination stated that HEJ desired to terminate the CBA and the

CRA pursuant to CBA Section 1.1. Def.'s CSF Ex. 1, ECF No. 12-3.

By purportedly hand delivering the notice of termination to the

Union on March 3, 2016, HEJ states that it provided 181 days'

notice that it desired to terminate the Agreement pursuant to

CBA Section 1.1—i.e., it desired to terminate the CBA before

renewal, effective August 31, 2016.  Def.'s Mem. at 3; Reply Br.

at 4-5.

The Trust Funds dispute that the Union ever received HEJ's March 3, 2016 notice of termination. Opp. at 8-11; Trust Funds' Responsive Concise Statement of Facts ("Pls.' CSF") ¶ 1, ECF No. 22; Declaration of Joy Nishino ("Nishino Decl.") ¶ 3. They support their contention with several declarations from Union- or Trust Fund-affiliated individuals. First, the Trust Funds submit the Declaration of Joy Nishino, one of the custodians of record for the Hawaii Regional Council of Carpenters ("HRCC") of the United Brotherhood of Carpenters and Joiners of America. Mrs. Nishino claims that she could not find HEJ's notice of termination in HRCC's records after conducting a thorough search. Nishino Decl. ¶¶ 2-3. Mrs. Nishino also states that HRCC's offices followed a standard protocol upon receipt of all hand-delivered notices of termination—including date stamping the notice and forwarding it for legal review—but has no record of this protocol being followed in relation to HEJ's notice of termination. Id. ¶¶ 5-6. The notice of termination HEJ submits is not date-stamped and contains no indication that any HRCC official received it. See Def.'s CSF, Hall Decl. Ex. 1.

Second, the Trust Funds submit the Declaration of Ronald I. Taketa ("Taketa Decl."), who was HRCC's Executive Secretary and Treasurer on March 3, 2016. Taketa Decl. ¶ 1, ECF No. 19-11. Mr. Taketa, whose responsibilities included

7

supervising the relationships between HRCC and its signatory employers like HEJ, claims that he had no knowledge of HEJ's March 3, 2016 notice of termination or intention to terminate the CBA until after the Trust Funds initiated this action. Id. ¶¶ 2-3. Further, Mr. Taketa declares that had he received HEJ's notice of termination, he would have conducted an inquiry with legal counsel and sent any acceptance of the termination in writing. Id. ¶ 4.

Finally, the Trust Funds submit the Declaration of Sarah M. Kobayashi ("Kobayashi Decl."), who was at all relevant times a Contribution Accounting Supervisor with Hawaii Benefit Administrators, Incorporated ("HBAI"). Kobayashi Decl. ¶ 1, ECF No 19-4. HBAI is a third-party benefit administrator for the Trust Funds responsible for the collection and accounting of employer contributions of fringe benefits under the CBA. Id. ¶ 2. Ms. Kobayashi was one of the custodians of records for HBAI tasked with documenting HEJ's contracts and correspondence with HBAI. Id. Ms. Kobayashi outlines the standard procedure she and her staff would have followed if HRCC would have received and forwarded HEJ's March 3, 2016 notice of termination, but declares that: (1) she could not locate HEJ's notice of termination in HBAI's records despite an exhaustive search; and (2) HBAI has no record that its normal procedure was completed

in relation to HEJ's March 3, 2016 notice of termination.  Id.
¶¶ 4-5.

### III.   This Action is Commenced

HEJ contends that it made no further contribution
payments under the CBA after August 2016, and the Trust Funds
did not audit HEJ after August 2016.  Def.'s CSF ¶ 2; id., Hall
Decl. ¶ 4.  The Trust Funds, in contrast, assert that they
consistently requested audit materials from HEJ after the period
HEJ now claims it terminated the CBA.  Kobayashi Decl. ¶ 6.
They claim that on February 6, 2017, they mailed HEJ a partial
pay stub audit for the period from June 2016 to December 2016.
Id. and Ex. 1; Pls.' CSF ¶ 3.  The Trust Funds contend that HEJ
thereafter provided necessary audit materials on August 3, 2017
and November 6, 2017, which allowed the Trust Funds to return a
full audit to HEJ on November 21, 2017.  Kobayashi Decl. ¶ 7 and
Ex. 2; Pls.' CSF ¶ 3.

On January 31, 2018, the Trust Funds filed the
Complaint, ECF No. 1, after HEJ failed to respond or remit
payment following the November 21, 2017 audit.  On February 13,
2018, HEJ's counsel emailed the Trust Funds' counsel stating
that HEJ stopped making payments under the CBA as of August 2016
pursuant to the March 3, 2016 notice of termination.
Declaration of Jeffrey P. Miller ("Miller Decl.") Ex. A at 2,
ECF No. 19-8.  Later that day, HEJ's counsel again emailed the

Trust Funds' counsel, attaching the Declaration of Brian Hall in which Mr. Hall stated that: (1) he hand delivered HEJ's notice of termination to the Union on March 3, 2016; (2) HEJ stopped making contributions after August 2016 based on the notice of termination; and (3) the Trust Funds did not perform an audit of HEJ after August 2016. Id. at 1, 3-6.

The Trust Funds' counsel responded the next day, on February 14, 2018, as follows:

> Thank you for the Declaration. Due to illnesses at the Trust Fund office it has been difficult for me to get a full picture of the history for this account and I don't want to pass on partial or incorrect information. We do not intend to request a default of H.E. Johnson while we work to resolve this so please give me a few days to get all of the information to fully respond to your client's position. Thanks."

Id. at 1. HEJ's counsel replied: "The answer is not due until next week so let's see if we can get this cleared up before then." Id.

Around three hours later, still on February 14, 2018, HEJ's counsel emailed the Trust Funds' counsel an unfiled Motion for Sanctions based on the Declaration of Brian Hall. Miller Decl. Ex. B at 2-3, ECF No. 19-9. HEJ's counsel further noted that HEJ would "incur the expense of answering the complaint on Feb. 26, unless plaintiffs agree to extend the due date." Id.

On February 15, 2018, the Trust Funds' counsel responded that his client was still investigating, but that: (1) neither the HRCC nor the Trust Funds' administrative office had any record of receiving HEJ's March 3, 2016 notice of termination; and (2) the Declaration of Brian Hall was supposedly inaccurate because two audits had been conducted and mailed to HEJ following the supposed termination. Miller Decl. Ex. B at 1-2. The Trust Funds' counsel also forwarded HEJ the post-August 2016 audits and proposed to extend HEJ's time to answer or otherwise respond to the Complaint until March 12, 2018. Id. at 2, 4-15.

HEJ's counsel responded minutes later, stating: "It does not matter whether the trustees ever received the [notice of termination]. It is undisputed that [HEJ] delivered it to the union . . . . [therefore] [y]ou and the trustees have 20 days left to withdraw the frivolous lawsuit." Id. at 1. Just five days later, on February 20, 2018, HEJ filed its Answer and the MSJ. ECF Nos. 9, 11.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element

11

essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal. at Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it

could affect the outcome of the suit under the governing law."
In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing
Anderson, 477 U.S. at 248).  When considering the evidence on a
motion for summary judgment, the court must draw all reasonable
inferences on behalf of the nonmoving party.  Matsushita Elec.
Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille
Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating
that "the evidence of [the nonmovant] is to be believed, and all
justifiable inferences are to be drawn in his favor").

## DISCUSSION

### I.   Whether there is no Genuine Dispute of Material Fact that the CBA was Terminated

HEJ asserts that the Trust Funds "have no right to
claim contributions for hours worked after termination of the
agreement[.]"  Def.'s Mem. at 3.  The Trust Funds counter that
the CBA was never effectively terminated because the Union never
received HEJ's notice of termination.  Opp. 8-11.  Resolution of
HEJ's MSJ, therefore, turns on whether there is a genuine
dispute of material fact as to whether HEJ effectively
terminated the CBA.

### A.   Availability of Contract Defenses

In an action to collect contributions, trust funds
stand in the position of third-party beneficiaries to a
collective bargaining agreement.  Carpenters Health & Welfare

Tr. Fund for California v. Bla-Delco Const., Inc., 8 F.3d 1365,
1369 (9th Cir. 1993) ("Bla-Delco").  While the rights of third-
party beneficiaries are typically subject to any contract
defenses that the promisor could assert against the promisee,
Congress and courts have limited the availability of certain
contract defenses in the context of trust fund collection
actions because "millions of workers depend upon the employee
benefit trust funds for their retirement security."  S.W.
Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th
Cir. 1986).

        In the Ninth Circuit, termination of a CBA is
generally not a legitimate defense in a trust fund collection
action.  Bla-Delco, 8 F.3d at 1369 (finding that the defendant's
"purported termination of the CBA is not a legitimate defense to
the Trust Funds' [collection] action."); see also Trustees of
Eighth Dist. Elec. Pension Fund v. Gietzen Elec., Inc., 898 F.
Supp. 2d 1193, 1200 (D. Idaho 2012) ("In the Ninth Circuit, only
those defenses demonstrating illegality of the contributions or
striking at the heart of the underlying collective bargaining
agreement as void ab initio (as opposed to, merely, voidable),
are available when contesting delinquency actions such as
this."); Carpenters Sw. Admin. Corp. v. T&R Painting & Drywall,
No. LACV166498VAPPLAX, 2017 WL 4769437, at *7 (C.D. Cal. Aug.
10, 2017) ("The Ninth Circuit has held that purported

14

termination is not a legitimate defense to an action to collect contributions due under a CBA.").

Courts have explained that the crucial inquiry in deciding whether a particular contract defense is permissible in a collection action is whether the defense would result in the CBA at issue being void or merely voidable. Bla-Delco, 8 F.3d at 1369; see also TF Suppl. Mem. at 6. A termination defense—a contract defense that typically renders the contract at issue "voidable"—is generally not a legitimate defense in an ERISA collection action. E.g., id.; Trustees of Plumbers & Pipefitters Union Local 525 Health & Welfare Tr. & Plan v. Sotelo, No. 213CV00657RFBNJK, 2017 WL 4288681, at *4-5 (D. Nev. Sept. 27, 2017) (quoting Bla-Delco for the proposition that the defendant's "purported termination of the CBA is not a legitimate defense to the Trust Funds' action"); see also Masonry Indus. Tr. Admin., Inc. v. Woodburn Masonry, Inc., 116 F.3d 484 (9th Cir. 1997)(unpublished decision) ("If the union had disputed [the defendant]'s understanding of the CBA as terminated, the agreement would have been only voidable and its termination could not be a defense to this trust action.").

The Trust Funds thus contend in their supplemental memorandum that HEJ's purported termination "is not a legitimate defense" in this action. TF Suppl. Mem. at 5, 7. HEJ responds that Bla-Delco and its progeny do not apply because, unlike the

employer in Bla-Delco, HEJ "was not entitled to take [its] termination dispute to arbitration."  HEJ's Suppl. Mem. at 3.

Highlighting this distinction, HEJ asserts that the CBA here—unlike the collective bargaining agreement at issue in Bla-Delco—allows HEJ to grieve just two violations:  "(1) a violation of Section 7 (No Strike Or Lockout) or (2) a refusal to refer employees according to Section 26.3 (Referral and Hiring Procedure)."  Id. (citing CBA at 26).  Accordingly, HEJ claims that the CBA at issue in this matter leaves this Court as the only authority able to decide HEJ's termination dispute. Id. at 3-4, 7; Cf. MacKillop v. Lowe's Mkt., Inc., 58 F.3d 1441, 1446 (9th Cir. 1995) ("Where there are grievance and arbitration procedures under the CBA, as in Bla-Delco, the obligation to make contributions to the ERISA plans continues until those procedures are followed and the CBA is ruled to be terminated by the appropriate authority.").

The Court agrees and finds significant the differences between the dispute resolution provisions in the collective bargaining agreement at issue in Bla-Delco and the CBA in this matter.  The Court finds support for its conclusion in the narrow reading later cases have given Bla-Delco.  See HEJ's Suppl. Mem. at 4-5.  Indeed, the Ninth Circuit has explicitly cautioned courts against applying Bla-Delco beyond its intended scope.  See Laborers Health & Welfare Tr. Fund for N. California

16

v. Fisher Dev., Inc., 81 F.3d 168, 1996 WL 146689, at 5 (9th Cir.

1996) (unpublished opinion); see also Plumbers & Pipefitters

Local Union No. 572 Health & Welfare Fund v. A & H Mech.

Contractors, Inc., 100 F. App'x 396, 403 (6th Cir. 2004)

(observing that "[l]ater Ninth Circuit cases have given the

[Bla-Delco] decision a narrow reading.").

In Fisher Development, for example, the Ninth Circuit

explained that "[t]his Court's intention [in Bla-Delco] was not

to preclude evidence that there was no valid contract between

parties that would give rise to an obligation for an employer to

pay into the trust funds as required by a master agreement."

Id. at *5 (emphasis in original). The court stated that where

an employer asserts "that there may not be any contract at all

to obligate an employer to pay," Bla-Delco does not bar the

employer from raising a termination defense. Id.

Other decisions of the Ninth Circuit lend support to

the Court's conclusion that Bla-Delco established a limited rule

that should not be extended beyond the factual circumstances of

that case. See, e.g., Laborers Health & Welfare Tr. Fund for N.

California v. Leslie G. Delbon Co., 199 F.3d 1109, 1110 (9th

Cir. 2000) ("Bla-Delco dealt with a dispute regarding

termination that neither party had shown an intention to

abandon. In this case, however, the Union threatened to file

suit within ten days but instead did nothing for over ten

17

years."); <u>Laborers Health and Welfare Trust Fund v. Westlake</u>
<u>Dev. Co.</u>, 53 F.3d 979 (9th Cir. 1995) (permitting an exception
to the general rule against unilateral termination of a CBA
where there were "unique circumstances of a single-employee
bargaining unit"); <u>Sheet Metal Workers' Int'l Ass'n, Local 206</u>
<u>of Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. W. Coast Sheet</u>
<u>Metal Co.</u>, 954 F.2d 1506, 1509 (9th Cir. 1992) ("A contract to
contribute to a trust fund of a Union . . . . [has] no legal
effect when the Union is no longer the certified representative
of [the defendant]'s employees.").  Although this matter's facts
distinguish it from these post-<u>Bla-Delco</u> decisions, <u>see</u> TF
Suppl. Mem. at 7-9, such cases serve as useful guideposts in
applying <u>Bla-Delco</u>.

Additionally, District courts within the Ninth Circuit
have limited <u>Bla-Delco</u>'s reach.  In <u>Alaska Trowel Trades Pension</u>
<u>Fund v. Lopshire</u>, for example, the court stated that "to read
<u>Bla-Delco</u> [to block an employer from raising a termination
defense] would vitiate an employer's legal right to terminate a
collective bargaining agreement or pre-hire agreement."  855 F.
Supp. 1077, 1082 (D. Alaska 1994), <u>aff'd in part, rev'd in part</u>
<u>on other grounds</u>, 103 F.3d 881 (9th Cir. 1996).  The <u>Lopshire</u>
court reasoned that such a reading "would call for a conclusion

that Bla-Delco overruled West Coast [Sheet Metal][2] sub silentio."

855 F. Supp. at 1082 (D. Alaska 1994). In addition, the court

explained that "unlike the incomplete termination in Bla-Delco,

the defendant in the instant case gave notice of his intent to

terminate the [CBA] which, if actually given, would render [the

CBA], including defendant's agreement to make contributions,

void not voidable." Id. The Court finds Lopshire's reasoning

persuasive under the analogous facts of this case.

In light of the post-Bla-Delco case law narrowly

interpreting that case's holding, the Court will consider HEJ's

termination defense. As explained in Section I.B, supra,

however, the Court nevertheless finds that HEJ is not entitled

to summary judgment.

**B.  Receipt of the Notice of Termination**

Summary judgment is inappropriate where there is a

genuine dispute of material fact. Celotex Corp., 477 U.S. at

324. In this case, whether the Union ever received HEJ's March

3, 2016 notice of termination is a question of fact material to

---

[2] In West Coast Sheet Metal, the Ninth Circuit held that decertification of a union prospectively voided an employer's obligation to make contributions under a collective bargaining agreement. 954 F.2d at 1509-10. The court opined that: "[a] contract to contribute to a trust fund of a union with which [the defendant] has no ongoing collective bargaining relationship makes no sense." Id. at 1509. The court rejected the argument that the only defenses to a trust funds' collection action are illegality or that the collective bargaining agreement was void ab initio because "legal obligations have their source either in authority acting within its proper jurisdiction or in contract properly executed and currently effective." Id.

HEJ's obligation to contribute under the CBA.  The Court must

therefore decide whether a genuine dispute exists as to the

Union's receipt of HEJ's notice of termination.

HEJ's two-page memorandum in support of its MSJ quotes

the CBA's duration provisions and states the following:

> Defendant terminated the agreement effective
> August 31, 2016 by giving its written notice
> of termination to the union 181 days before
> that date, on March 3, 2016. . . .
> Plaintiffs have no right to claim
> contributions for hours worked after the
> termination of the agreement in this Court.

Def.'s Mem. at 2-3 (citations omitted).  HEJ additionally

submits the Declaration of Brian Hall, which attaches HEJ's

March 3, 2016 notice of termination which Mr. Hall testifies to

hand delivering the Union.  Def.'s CSF, Hall Decl. ¶¶ 1-4 and

Ex. 1.

The March 3, 2016 notice of termination that HEJ

submits, however, conspicuously lacks a date-stamp, a signature

of receipt from a Union representative, or any other indication

that the Union ever received it.[3]  See id.  And, as even the

---

[3] In its April 24, 2018 Response to Plaintiffs' Late-Filed [22] Responsive
Concise Statement of Facts, ECF No. 25, HEJ contends that "there is no
dispute of fact that Defendant delivered a notice of contract termination to
Carpenters Union Local 745 . . . . [and that the Trust Funds] only dispute[]
[that they, as opposed to the Union,] never received" the termination letter.
Id. at 3 (emphasis omitted).  HEJ is apparently attempting to distinguish
between delivery to the Union (which it claims) and delivery to the Trust
Funds (which it does not claim).  While the Trust Funds' late-filed CSF does
state that "Plaintiffs never received" HEJ's notice of termination, ECF No.
22 at 3 (emphasis added), the evidence to which the Trust Funds cite
specifically disputes whether the Union—not just the Trust Funds—received
(continued . . . . )

cases HEJ cites explain, "[w]here the giving of written notice is required by statute or contract . . . . the notice is effective when received." NLRB v. Vapor Recovery Sys. Co., 311 F.2d 782, 785 (9th Cir. 1962) (cited in Reply Br. at 5). HEJ has not offered any other evidence that the Union received the March 3, 2016 notice of termination, such as testimony from a Union representative or other records of receipt. E.g., Alaska Trowel Trades Pension Fund, 855 F. Supp. at 1083 ("Defendant presents evidence from a person authorized to receive mail for the trust funds that she received the letter . . . . That the April 2, 1986, letter cannot be found by the union . . . does not place into controversy the fact that Local 867's receptionist acknowledged receipt of the letter."). Simply put, HEJ has not shown that there is no genuine dispute as to whether it hand delivered the notice of termination to the Union.

The Trust Funds, for their part, contest the effectiveness of HEJ's termination. They submit declarations from Union- or Trust Fund-affiliated individuals, which provide evidence that the Union: (1) has no record of receiving HEJ's notice of termination; (2) followed a standard protocol that would have been, but never was, completed following HEJ's supposed hand-delivery of the notice of termination; (3) never

---

(continued . . . .)
HEJ's notice of termination. E.g., Nishino Decl. ¶¶ 2, 3; Taketa Decl. ¶¶ 2, 3.

performed a legal review or other analysis of its contractual

relationship with HEJ; (4) never sent HEJ a written acceptance

or refusal of HEJ's termination; and (5) received partial audit

materials from HEJ after HEJ purportedly terminated the CBA.[4]

See generally Nishino Decl.; Taketa Decl.; Kobayashi Decl.

---

[4] HEJ argues in its reply brief that the Trust Funds' declarations improperly rely on inadmissible evidence. See ECF No. 21 at 6-12; see also HEJ's Suppl. Mem. at 9-10. At the summary judgment stage, parties must set out facts they will be able to prove at trial. Fed. R. Civ. P. 56(c)(4). Courts "do not focus on the admissibility of the evidence's form . . . . [but] instead focus on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted). "While the evidence presented at the summary judgment stage is not required to be in a form that would be admissible at trial, the proponent must set out facts that it will be able to prove through admissible evidence." Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010) (citations omitted). Thus, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Block v. City of L.A., 253 F.3d 410, 418-19 (9th Cir. 2001).

HEJ's motion and reply brief do not address Federal Rule of Evidence 803(7) (HEJ instead took the opportunity to improperly address the Rule in its supplemental memorandum, which should have been limited to the applicability of the Bla-Delco decision, see HEJ's Suppl. Mem. at 9-10). The Court notes that Rule 803(7), entitled "Absence of a Record of a Regularly Conducted Activity," directs that "[e]vidence that a matter is not included" in a record of regularly conducted activity is admissible if: "(A) the evidence is admitted to prove that the matter did not occur or exist; (B) a record was regularly kept for a matter of that kind; and (C) the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7)(A)-(C).

As HEJ correctly points out, in order for "[e]vidence that a matter is not included" in a record of regularly conducted activity to be admissible under Rule 803(7), there must first be evidence of that record of regularly conducted activity under Rule 803(6). See HEJ's Suppl. Mem. at 9-10. The declarations the Trust Funds submit—some of which offer testimony from HBAI and HRCC's custodians of records regarding records maintained in the ordinary course of business—seem to set forth sufficient facts that the Trust Funds could present in admissible form at trial to satisfy Rules 803(6) and 803(7). Compare Nishino Decl. ¶ 2 ("I am one of the custodians of records for HRCC's records documenting [HEJ's] contracts and correspondence with HRCC. Those records are maintained in the ordinary course of HRCC's business. Entries into those records are made at or near the time of any event . . . .") and id. ¶ 3 ("I conducted a thorough search of HRCC's records to determine whether the March 3, 2016 letter was received by HRCC. No such letter was found in HRCC's records.") with Fed. R. Evid. 803(6)-(7). (continued . . . . )

The Trust Funds' evidence also shows that it continued to request audit materials from HEJ after the purported termination, and mailed a pay stub audit to HEJ on February 2, 2017 identifying it as a partial audit. Miller Decl. Ex. B at 1-2. HEJ then provided the Trust Funds with partial audit materials on August 3, 2017 and November 6, 2017, after which the Trust Funds mailed a full audit to HEJ covering the period between January 2015 and February 2017. Id. At the very least, this conduct shows that the Trust Funds did not sit on their hands after the purported termination, and HEJ could not have justifiably assumed that its contribution obligations had come to an end based on the Trust Funds' conduct. See Laborers Health & Welfare Tr. Fund for N. California, 199 F.3d at 1111.

Viewing the evidence in the light most favorable to the Trust Funds, Scott v. Harris, 550 U.S. 372, 378 (2007), there is at least a genuine issue of material fact as to whether HEJ effectively terminated the CBA. Without the benefit of discovery and a developed factual record on this issue, the

---

(continued . . . .)

Further, the declarants in the Trust Funds' declarations also testify that they "have personal knowledge of the matters set forth" in their declarations "and if required, could and would competently testify thereto." E.g., Nishino Decl. ¶ 1; Kobayashi Decl. ¶ 1. The practical question presented by a motion for summary judgment is whether the case presents a genuine issue of fact for trial rather than whether the parties have put their evidence in final form. Accordingly, the Court will not forgo consideration of the Trust Funds' declarations at this stage.

Court cannot find as a matter of law that HEJ effectively
terminated the CBA.[5]

## II.   The Trust Funds' Request for Sanctions Against HEJ

The Trust Funds level the serious charge that HEJ
filed declarations "that knowingly misrepresent facts to this
Court."  Opp. at 13-14.  Based on this charge, the Trust Funds
request that this Court impose sanctions on HEJ pursuant to
Federal Rule of Civil Procedure 56(h).  Rule 56(h) provides:

> If satisfied that an affidavit or
> declaration under this rule is submitted in
> bad faith or solely for delay, the court—
> after notice and a reasonable time to
> respond—may order the submitting party to
> pay the other party the reasonable expenses,
> including attorney's fees, it incurred as a
> result.  An offending party or attorney may
> also be held in contempt or subjected to
> other appropriate sanctions.

Fed. R. Civ. P. 56(h).  Courts in the Ninth Circuit have
explained that a declaration is submitted in bad faith—the
apparent basis for the Trust Fund's request for sanctions here—
where it "knowingly contains perjurious or intentionally false
assertions or knowingly seeks to mislead by omitting facts
central to a pending issue."  Coble v. Renfroe, No. C11-0498-
RSM, 2012 WL 4971997, at *2 (W.D. Wash. Oct. 17, 2012) (citation

---

[5] The parties dedicate considerable time and paper to the issue of whether the
Trust Funds are seeking payment for hours worked before December 2016.  E.g.,
Def.'s CSF ¶ 3; Def.'s CSF, Harris Decl. ¶ 2; Opp. at 11-12; Pls.' CSF ¶ 3.
Because the Court finds that there is at least a genuine issue of material
fact as to whether HEJ effectively terminated the CBA effective August 2016,
the Court need not decide whether the Trust Funds seek payment for hours
worked before or after that date.

omitted); <u>Raher v. Fed. Bureau of Prisons</u>, No. 03:09-CV-00526-ST, 2011 WL 4832574, at *8 (D. Or. Oct. 12, 2011) ("Bad faith in the context of Rule 56(h) requires a deliberate or knowing act for an improper purpose.").

The Trust Funds claim that the Declaration of Brian Hall misrepresented that the Trust Funds did not audit HEJ after August 2016. Opp. at 13-14. They assert that HEJ knew this statement was false before filing its MSJ because they emailed HEJ copies of post-August 2016 audits on February 15, 2018. <u>Id.</u> Further, email correspondence the Trust Funds submit with their opposition show that, after reviewing the unfiled Declaration of Brian Hall, the Trust Funds' counsel advised HEJ's counsel:

> [T]he Declaration of Brian Hall is inaccurate. While he correctly testified that H.E. Johnson stopped making contributions after August 2016, he incorrectly testified that the trust Funds did not audit H.E. Johnson after that date. To the contrary, the Trust Funds repeatedly requested H.E. Johnson [sic] to provide audit materials so it could confirm that the hours reported were accurate and complete. The Trust Funds was [sic] able to conduct a pay stub audit based on certified payroll for the period of June 2016 through December, 2017, and mailed the pay stub audit to H.E. Johnson on February 2, 2017 identifying it as a partial audit. Attached is a copy for your review. Ultimately, on August 3, 2017, Ken Johnson of H.E. Johnson dropped off incomplete audit documents to the Trust Funds administrative office, and on November 6, 2017, H.E. Johnson provided the remaining documents so that a full audit could be completed. A full audit for the

> period of January 2015 through February 2017
> was completed and sent to H.E. Johnson on
> November 21, 2017.  Attached is a copy for
> your review.

Miller Decl. Ex. B at 1-2.  Despite the Trust Funds' above

notice, HEJ filed the Declaration of Brian Hall with its MSJ

(and with the statement at issue unchanged).[6]

Under these circumstances, however, the Court finds it

inappropriate to award the Trust Funds attorneys' fees or other

sanctions.  Even if the Court determined that any of HEJ's

declarations were made in bad faith, no award under Rule 56 is

warranted where a bad-faith declaration has no effect on the

outcome—e.g., where, as here, summary judgment is denied despite

the moving party's knowing reliance on a (potentially) false

declaration.  E.g., Faberge, Inc. v. Saxony Products, Inc., 605

F.2d 426, 429 (9th Cir. 1979) (per curiam) (holding that

sanctions under Rule 56 were not warranted, even if affidavit in

question was submitted in bad faith, because the outcome of the

summary judgment motion did not turn on the affidavit); Coble,

---

[6] The Trust Funds also assert that the Declaration of Jeffrey S. Harris
misrepresents that the Trust Funds "claim no contributions due for hours
worked before December 2016."  Opp. at 14-15.  They claim that Mr. Harris's
testimony relies upon only a November 2017 full audit from the Trust Funds
(which shows no contributions owing before December 2016), but knowingly
omits reference to a February 2017 partial pay stub audit showing
contributions owing between August and December 2016.  Id.  The Court notes
that the full audit was sent to H.E. Johnson on November 21, 2017, and
purported to cover the period of January 2015 through February 2017.  It was
thus at least reasonable to believe that the full audit—which covers the
period of the partial audit and was filed around nine months later—
represented the contributions on which the Trust Funds' claims were based.
Accordingly, it is not at all clear that Mr. Harris made a knowingly false
statement, let alone submitted his declaration in bad faith.

2012 WL 4971997, at *3 ("Even assuming that the affidavit in question was submitted in bad faith, Plaintiff is not entitled to the award it seeks under Rule 56 because [the affiant's] allegedly erroneous statement had no material effect on the Court's decision to grant the summary judgment motion."); Raher, 2011 WL 4832574, at *7 ("[C]ourts have not awarded sanctions under Rule 56 . . . where a litigant's actions, even though wrongful, did not affect the disposition of the summary judgment motion." (citation and internal quotation marks omitted)).

Because the Court denies HEJ's motion for summary judgment herein, HEJ's declarations (even assuming they were submitted in bad faith) had no effect on the outcome of HEJ's motion. Accordingly, the Trust Funds' request for Rule 56(h) sanctions is also denied.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment and DENIES Plaintiffs Hawaii Carpenters Trust Funds' request for sanctions.

IT IS SO ORDERDED.

<u>DATED</u>:  Honolulu, Hawaii, May 8, 2018.



_____
Alan C. Kay
Sr. United States District Judge

<u>Hawaii Carpenters Trust Funds et al. v. H.E. Johnson Company, Inc. et al.</u>,
Civ. No. 18-00041 ACK-KSC, Order Denying Defendant's Motion for Summary
Judgment and Plaintiffs' Request for Sanctions